GEORGE H. DONOVAN, administrator, *vs.* PATRICK MUTRIE.

SAME *vs.* FRANCIS P. MUTRIE.

Suffolk.    December 6, 1928. — January 3, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* In use of highway, Contributory, Motor vehicle.  *Evidence,* Presumptions and burden of proof.  *Practice, Civil,* Exceptions.

A man about seventy years of age, carrying a heavy bundle, approached on his right hand side of a street its intersection with another street in Boston where foot and vehicular travel was heavy, and paused and looked both ways before crossing.  At that time a traffic officer had stopped vehicles approaching on the second street at the line of the left hand side of the first street, and foot travellers preceding him were about half way across the second street.  The man started to cross and had gone about eight feet from the curb when the officer signalled for traffic to move from the man's left on the second street; the man thereupon turned toward an approaching truck, apparently tried to avoid it by going back, and was struck by it and killed.  In actions by the administrator of his estate, respectively against the owner and the driver of the truck, the driver testified that he did not see the plaintiff's intestate as he was crossing the street.  There were verdicts for the plaintiff.  *Held,* that

(1) The question, whether the plaintiff's intestate was called upon to act in an emergency which he was not to blame for creating, and whether negligence on his part contributed to the injury, were for the jury;

(2) Instructions to the jury, in substance, that, in determining whether one acts with reasonable care in a sudden emergency, the fact that he is obliged to act quickly and without an opportunity for deliberation is to be taken into account, and he is not to be deemed careless merely because he failed to do that which would have been best as shown by subsequent events, but that that doctrine cannot be invoked to release him from a position where he had placed himself through his own negligence, and that he is still "bound to use the same degree of care to which he is ordinarily held," were correct;

(3) In view of the driver's testimony that he did not see the plaintiff's intestate, it was proper for the judge to refuse to rule that such instructions should apply to his conduct;

(4) There was evidence that the driver in the exercise of reasonable care should have seen the plaintiff's intestate in the street when the truck started and was traversing the intervening space, and should have taken some precautions to avoid running into him, notwithstanding the fact that traffic had started in accordance with the direction of the traffic officer;

(5) While the driver had a right to rely to some extent on the expectation that when the traffic officer authorized the traffic to move pedestrians ordinarily would not be crossing the street, he had no right to abandon all care for the safety of pedestrians in reliance on that expectation;

(6) The judge properly refused to rule that the driver "had every right to assume that the deceased would not proceed to the position where he was struck, once the signal had been given by the traffic officer for traffic to proceed."

The bill of exceptions in the action above described did not present all the evidence bearing on the conduct of the plaintiff's intestate: it did not appear whether he heard or saw or should have heard or seen the officer's signal or whether his conduct was influenced to some extent by the fact that other pedestrians were crossing when he started, and it was *held* that, on the record, this court could not say that there was error in an instruction by the judge that, if the decedent started to cross the street after the traffic officer gave his signal, or after traffic started, the plaintiff was not necessarily precluded from recovering and the decedent was not necessarily guilty of contributory negligence as matter of law.

Two ACTIONS OF TORT with declarations described in the opinion. Writs dated October 13, 1925, and March 19, 1926, respectively.

In the Superior Court, the actions were tried together before *Whiting*, J. In addition to evidence described in the opinion, there was evidence that Battery Street runs practically east and west, and Commercial Street north and south; that Battery Street, including the sidewalk, is about thirty feet wide, and Commercial Street forty feet wide;

that, previous to the accident, a traffic officer had stopped traffic going south on Commercial Street and the defendant's truck had stopped on the northwest corner next the curb; that the plaintiff's intestate started to cross Commercial Street from the southwest corner of Battery Street, and had proceeded about eight feet from the curb when, at the officer's signal, the defendant's truck started.

At the close of the evidence, the defendant in each action moved that a verdict be ordered in his favor. The motions were denied. The defendants then asked for the following rulings, among others:

"1. That the deceased Salvatore Arcadipani was not in the exercise of due care."

"9. That the driver of the Mutrie truck had every right to assume that the deceased would not proceed to the position where he struck, once the signal was given by the traffic officer for traffic to proceed along Commercial Street."

"3 a. That the accident was unavoidable."

The requests were refused.

The trial judge in his charge instructed the jury as follows:

"In determining whether one acts with reasonable care in a sudden emergency, the fact that he is obliged to act quickly and without an opportunity for deliberation is to be taken into account, and he is not to be deemed careless merely because he failed to do that which would have been best as shown by subsequent events. . . .

"It is true that allowance must be made for one compelled to act immediately, without opportunity for deliberation, upon a sudden emergency. But this does not mean that he is necessarily excused for any error of judgment, but simply that his conduct is to be judged in view of the exigency and the need of immediate action. He is still bound to use the same degree of care to which he is ordinarily held; but due allowance must be made for the situation in which he is placed, and he is not to be held to the coolness of judgment for which there is not time. . . .

"While it is well settled . . . that a person is not to be charged with negligence because of a mere error of judgment when he is placed in sudden peril and the circumstances are

such as to require speedy decision and action, yet that doctrine cannot be invoked to release him from a position where he had placed himself through his own negligence."

The defendants duly excepted to the foregoing portions of the charge and contended that they should apply to the conduct of the defendant driver. The judge refused so to charge the jury.

There were verdicts for the plaintiff, in the first action in the sum of $2,245, and in the second action in the sum of $2,193.33. The defendants alleged exceptions.

*J. J. Curran*, for the defendants.

*W. P. Lombard*, for the plaintiff.

SANDERSON, J.   Each of these cases is an action for death and conscious suffering of the plaintiff's intestate, Salvatore Arcadipani, alleged to have been caused by the negligence of the defendant Patrick Mutrie, in the operation of a motor truck owned by his son, Francis P. Mutrie, the defendant in the other case. Agency of the driver was admitted. In each case a verdict was returned for the plaintiff.

The decedent, a man about seventy years of age, was killed while crossing Commercial Street, in Boston, near its intersection with Battery Street, by a truck driven on Commercial Street in a southerly direction. That street is about forty feet wide with an elevated structure upon it, together with the Battery Street station of the Boston Elevated Railway. The deceased walked down Battery Street to Commercial Street when both foot travel and vehicular traffic were heavy. Upon reaching the sidewalk on Commercial Street at the corner of Battery Street, the plaintiff's intestate paused and looked both ways on Commercial Street. At that time traffic on Commercial Street had been stopped by a traffic officer and pedestrians were crossing from Battery Street. The deceased started from the curb to cross and when he had gone about eight feet the officer gave the signal for vehicles to move. At this time the defendant's truck was at the head of the line and nearer the curb than the automobile on its left. When the deceased started to cross no vehicles had moved and some people were then about halfway across. The deceased kept on his

way until he turned toward the approaching truck and apparently tried to avoid it by going back but was hit by the front of the truck or the front right wheel. When hit he carried under his arm a bundle of boards or some other heavy material. One of the right wheels or both of them went over him. The jury could have found that when struck he was about fifteen feet from the curb which he had left.

There was evidence that the truck, carrying a load of five or six tons, was moving at the rate of fifteen or more miles an hour at the time of the accident. From the point where it started to the place of the accident it had travelled a distance stated by the driver to be about forty feet, and stated by a witness called by the plaintiff to be seventy-five feet. There was evidence that the truck went fifteen feet after hitting the deceased before stopping and that the driver made no effort to stop after the accident until signalled to do so by the officer's whistle. The driver testified that he saw a man on the curb and the next he knew the deceased "bumped against the middle of the front right mudguard"; that he did not see the deceased after he left the curb.

Upon these facts the question of the decedent's due care, as well as the question whether he was called upon to act in an emergency which he was not to blame for creating, were for the jury. The instruction of the judge concerning the conduct of a party when confronted by such an emergency stated the law substantially in accordance with decided cases. *Tozier* v. *Haverhill & Amesbury Street Railway*, 187 Mass. 179, 180. *Lemay* v. *Springfield Street Railway*, 210 Mass. 63, 67. *Tuttle* v. *Connecticut Valley Street Railway*, 239 Mass. 553, 556. No such situation confronted the driver for, on his own testimony, he did not see the deceased as he was crossing the street. The jury could have found, however, that the driver in the exercise of reasonable care should have seen the plaintiff's intestate in the street when the truck started and was traversing the intervening space, and should have taken some precautions to avoid running into him, notwithstanding the fact that traffic had started in accordance with the direction of the officer. Such direc-

tion has a material bearing on the due care of the party obeying it as well as on the negligence of a party disobeying. The driver had a right to rely to some extent on the expectation that when motor traffic was authorized to move pedestrians would not ordinarily be crossing the street, but he had no right to abandon all care for the safety of pedestrians to that expectation. He was still bound to use reasonable care to avoid injuring them, and in moving forward was bound to obey the statute requiring a motor vehicle when approaching a pedestrian upon the travelled part of the way to slow down and give a timely signal. G. L. c. 90, § 14. We cannot say that the judge erred in instructing the jury that, if the decedent started to cross the street after the traffic officer gave his signal, or after traffic started, the plaintiff is not necessarily precluded from recovering and the decedent was not necessarily guilty of contributory negligence as matter of law. If he so started, all the facts bearing on his conduct were not presented by testimony binding upon the plaintiff: we do not know whether he heard or saw or should have heard or seen the officer's signal; his conduct may have been influenced to some extent by the fact that other pedestrians were crossing when he started, and in other respects his conduct is not fully disclosed by the evidence. If he so started, although the evidence with its inferences points strongly toward want of care on his part, yet it is not of such a conclusive nature that we can say the instruction was erroneous in view of the statutory presumption and the rule as to burden of proof. G. L. c. 231, § 85. *Mercier* v. *Union Street Railway,* 230 Mass. 397, 403.

*Exceptions overruled.*